MEMORANDUM OPINION AND ORDER
FRANK POMMERSHEIM, Chief Justice.
I. Introduction
At the heart of the case is a conflict as to whether the basic authority to grant a Certificate of Incorporation to an Indian Livestock Cooperative Association resides solely with the Tribal Secretary or with the Tribal Council with both. This conflict and resulting impasse led to this litigation.
In May 2003, the initial incorporation papers for the Plaintiffs/Appellants were prepared by legal counsel for the Tribe and then presented to the Tribal Council for certification pursuant to the advice of the Tribe’s legal counsel. The Tribal *82 Council referred the proposed Articles of Incorporation to the Tribal Council Election Committee, which in turn informed the Plaintiffs that it would have to provide the signatures of the 100 members named in the Articles. Apparently, the Tribal Council Election Committee never completed its work with regard to this referral and review.
In any event, the Plaintiffs after securing outside counsel submitted the proposed Articles directly to the Tribal Secretary and paid the $500 fee. The Tribal Secretary took no action on Plaintiffs’ submission based on the view that the matter was pending before the Tribal Council Election Committee and the Tribal Council itself. Appellants Brief at 2. This lawsuit followed.
This case is essentially a consolidated appeal of two cases namely trial court cases C-l76-03 and C-l75-03. These cases seek, respectively, a writ of mandamus and a declaratory judgment. The writ of mandamus seeks to have Defendant Iron Hawk, Secretary of the Cheyenne River Sioux Tribe, issue a Certificate of Incorporation to the Plaintiff, District 1 Community Development Cooperative. The declaratory judgment action seeks a declaration as to the effective date of the legal existence of the District 1 Community Development Cooperative.[1]
The Defendant/Appellee subsequently filed a motion to dismiss on multiple grounds including sovereign immunity, failure to join an indispensable party, and the failure to state a claim upon which relief may be granted. The trial court granted the motion to dismiss on sovereign immunity grounds and did not consider or rule on any other claim for dismissal.
A timely notice of appeal was filed and this appeal followed. Oral argument was heard before this Court on January 4, 2006.
II. Issues
This appeal raises two issues, namely:
A. Whether sovereign immunity is a defense in an action which seeks a writ of mandamus to compel a Tribal official to perform a duty required by Tribal law; and
B. If sovereign immunity does not apply, whether the Tribal Secretary’s responsibilities under Ordinance 39 (Ordinance Governing Indian Livestock Cooperative Associations) impose a duty or are discretionary and whether said responsibilities have been performed.
Each issue will be discussed in turn.
III. Discussion
A. Sovereign Immunity[2]
It is an axiomatic principle of Indian law that tribes possess sovereign immunity and that it may be waived only by the federal government or the Tribe itself. See, e.g. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) and Kiowa Tribe of *83 Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Neither party to this action claims that any such waiver exists.[3] Appellants argue instead that the express availability of a writ of mandamus under tribal law does authorize very limited actions against Tribal officials to compel their performance of ministerial duties under Tribal law.
The Appellants claim that a writ of mandamus is expressly authorized under Rule 65.2 of the Cheyenne River Sioux Rules of Civil Procedure which provides:
(a) Grounds for Relief. Where no other plain, speedy and adequate remedy exists, relief may be obtained by obtaining an extraordinary writ which may be granted for one of the following reasons:
(1) Where any person usurps, intrudes into, or unlawfully holds or exercises a public office or does or permit to be done any act which by law works a forfeiture of his office; or
(2) Where an inferior tribunal, board or officer exercising judicial functions has exceeded its jurisdiction or abused its discretion; or
(3) Where the relief sought is to compel any interior tribunal, board or person to perform an act which the low specially enjoins as a, duty resulting from an office, trust or station; or to compel the admission of a party to the use and enjoyment of a right of office to which he is entitled and from which is unlawfully excluded by such inferior tribunal, board or person; or
(4)Where the relief sought is to arrest the proceedings of any tribunal, board or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, board or person, (emphasis added)
Thus, according to Appellants, a writ of mandamus is available to compel the Tribal Secretary “to perform an act which the law specifically enjoins as a duty resulting from an office, trust or station.” The Act which the Secretary is allegedly compelled to perform is found in Section V of Tribal Ordinance No. 39 (1983), which specifically provides:
Duplicate originals of the articles of incorporation, duly signed and acknowledged, shall be delivered to the Secretary of the Tribe and the Tribal Land Office for filing and recording. The legal corporation existence of a cooperative begins when the duplicate original articles are so delivered. The Secretary of the Tribe shall stamp on both originals the date of filing and recording and return one to the cooperative with his certificate of such filing and recording, (emphasis added)
According to Appellants, the use of the word “shall” twice without any reference to the word “may” (or any of its synonyms) in Sec. V makes the Secretary’s responsibility in Ordinance 39 clearly ministerial rather than discretionary.
The Appellee Tribe does not directly reject the notion of mandamus relief in the *84 abstract, but vigorously contests it in this concrete instance. Most telling in this regard is the fact that the Appellee Tribe does not cite a single case, federal, tribal, or state, that has held the issuance of a writ of mandamus to be barred by sovereign immunity. Faced with this absence of precedent, the Tribe makes a more novel argument. The basis of the Tribe’s sovereign immunity argument in this case is that the recognition of a “livestock cooperative association” under Tribal Ordinance 39 creates a “preference”[4] in the Cooperative with respect to the Tribal Council granting of grazing permits to range units. According to the Tribe, this “preference” creates a right in tribal property that in turn properly invokes the Tribe’s sovereign immunity protection.
While this argument is ingenious, it is legally defective for two reasons. First, the mere existence of a “preference” for the Cooperative in the granting of range unit permits by the Tribal Council does not create an actual property right of the Cooperative in Tribal land but only a potential or inchoate preference right to the use of tribal property. The Cooperative, of course, has not even been certified and it has not been awarded any grazing leases by the Tribal Council. This potential or inchoate preference right does not rise to the level to properly invoke a Tribal sovereign immunity defense. The existence of a sovereign immunity defense cannot be contingent on future events or transactions that are not before the Court. This Court does not, and cannot, engage in anticipatory adjudication or rest its decision on such speculation. Second, any concern the Tribe might have about the legal bona fides of a certified Indian Livestock Cooperative Association may be remedied by its express authority under the existing Tribal Ordinance to bring a “proceeding to cancel or revoke such certificate.” Sec. 11, Tribal Ordinance 39.
 In sum, sovereign immunity is not generally available in a mandamus action brought against a Tribal officer to perform a duty created by Tribal law enacted by the Tribal Council. To be absolutely clear, a mandamus action is not available to seek money damages or in-junctive relief, but only to compel a Tribal government official to perform a duty that is required by him or her under Tribal law.
B. Ordinance 39
Since tribal sovereign immunity is not a defense in this action, the Court must address the Tribal Secretary’s duties under Ordinance 39 in order to establish a framework to decide whether these duties are ministeiial or discretionary in nature. In this respect, the core of the Tribe’s argument is that Ordinance 39, which the Tribe admits is completely silent as to any role of the Tribal Council in the granting of a certificate of incorporation to an Indian Livestock Cooperative Association, was amended by Tribal Resolution No. 3-03-CR (2003) which provides in relevant part:
8. All Articles of Incorporation, Charter and By-Laws, etc. will be referred to appropriate council committee for review and recommendation before being considered by Tribal Council.
This argument fails for at least three reasons. First and foremost, Tribal Resolution No. 3-03-CR makes no reference whatsoever to Ordinance 39 and thus it is wholly implausible to construe the Resolution as amending an Ordinance it does not mention, discuss, or even cite. Second, Tribal Resolution No. 3-03-CR enumerates eight additional “changes” which are all directed to Tribal Council procedures such as “no cell phones when Council is in *85 session” and “Sargeant-at-Arms will maintain a quorum at all times.” Tribal Council Resolution No. 3-03-CR does not state at any point in its text that it is changing the substantive responsibilities of any Tribal official, officer, or employee. Thirdly, the Resolution describes itself as adopting “the following rules and procedures” and thus indicates that it is not changing its own or any one else’s substantive responsibilities. For all these reasons, the Court holds that Council Resolution 3-03-CR does not in any way amend Tribal Ordinance 39.
Finally, the Court must analyze what duties Tribal Ordinance 39 does impose on the Tribal Secretary. In this regard, the essence of what remains is determining whether the Secretary’s responsibilities under Ordinance 39 are wholly ministerial (i.e. whether they impose a legal duty to act) and whether she therefore must issue the Certificate of Incorporation if the form of the submitted Articles is proper or whether there is some element of discretion, for example, in determining whether the Articles are “duly signed and acknowledged” and thus her actions are not subject to remedy through an extraordinary writ of mandamus. Given that the Court below did not reach this issue because it dismissed the action on sovereign immunity grounds, the case is remanded for both a legal and a factual determination, if necessary, as to the adequacy of the Articles submitted to the Secretary.
IV. Conclusion
For all the above reasons, the judgment of the trial court is reversed and remanded.
IT IS SO ORDERED.
Ho hecetu yelo.

. Both parties agree that there was a third lawsuit filed by Plainuffs/Appellants, which was brought directly against the Tribe. In that case, District 1 Community Cooperative v. Hump, R-105-03, the Plaintiffs sought to enjoin the Tribal Council from allocating range units. That lawsuit was dismissed on sovereign immunity grounds and was not appealed. At oral argument in this case, counsel for Plaintiffs/Appellants affirmatively stated that her clients had no further intention to attack the validity of the Tribal Council’s allocation of range units granted for the period of November 1, 2003—October 31, 2008.

. The appropriate standard of review in the context of the (granting) a motion to dismiss is de novo. See e.g., Carter v. Arkansas, 392 F.3d 965 (8th Cir.2004).

. The Tribe’s sovereign immunity is expressly found at § 1 —8—4 of the Tribal Law and Order Code, as amended by Tribal Resolution No. 52-97-CR:
Except as required by federal law' or the Constitution and By-Laws of the Cheyenne River Sioux Tribe, or (whenj specifically waived by. a Resolution or Ordinance of the Tribal Council specifically referring to such, the Cheyenne River Sioux Tribe and its agencies, department and other political subdivisions shall be immune from suit in any civil action and its officers and employees immune from suit lor any liability arising from the performance of their professional duties.

. Sec. II(3)(a) of Grazing Ordinance 71 (2003).